UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| In re: | |
| THE INDUSTRIAL AUTHORITY OF MAYFIELD-GRAVES COUNTY | Case No. 23-50409-acs |
| Debtor | Chapter 11 |

## DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION SUBMITTED BY THE INDUSTRIAL AUTHORITY OF MAYFIELD-GRAVES COUNTY

Respectfully submitted,

*/s/ Tyler R. Yeager*
CHARITY S. BIRD
TYLER R. YEAGER
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Floor
Louisville, Kentucky 40202
Telephone: (502) 416-1630
Facsimile: (502) 540-8282
Email: cbird@kaplanjohnsonlaw.com
Email: tyeager@kaplanjohnsonlaw.com

RYAN K. COCHRAN
KENDRIA LEWIS
**Epstein Becker & Green, P.C.**
1222 Demonbreun St., Suite 1400
Nashville, Tennessee 37203
Telephone: (615) 564-6060
Email: rcochran@ebglaw.com
Email: klewis@ebglaw.com

*Counsel for The Industrial Authority of Mayfield-Graves County*

## 1. INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") for the Plan of Reorganization (the "Plan") filed on April 1, 2024, in the chapter 11 bankruptcy case (the "Chapter 11 Case") of The Industrial Authority of Mayfield-Graves County (the "Debtor"). The Bankruptcy Case was commenced on September 4, 2023 (the "Petition Date").

Debtor is seeking Confirmation of the Plan by the United States Bankruptcy Court for the Western District of Kentucky (the "Bankruptcy Court"). This Disclosure Statement is submitted for the Bankruptcy Court's approval as containing adequate information to be used in connection with the solicitation of acceptances of the Plan. Upon entry of an order approving this Disclosure Statement, Debtor will solicit acceptance of the Plan by holders of Claims entitled to vote their acceptance or rejection of the Plan.

*You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

**DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND OTHER STAKEHOLDERS. ALL ENTITIES ENTITLED TO VOTE ARE URGED TO VOTE IN FAVOR OF THE PLAN BY THE VOTING DEADLINE.**

### 1.1    *Purpose of this Disclosure Statement*

This Disclosure Statement describes Debtor and significant events during the Chapter 11 Case; how the Plan proposes to treat Claims of the type you hold (i.e., what you can expect to receive based on your Claim if the Plan is confirmed); who may vote on and/or object to Confirmation of the Plan; why Debtor believes the Plan is feasible; how the treatment of your Claim under the Plan compares to what you would likely receive on your Claim in a liquidation of Debtor; and the effect of Confirmation of the Plan. It is important to read the Plan as well as this Disclosure Statement. This Disclosure Statement described the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### 1.2    *Disclaimers*

The summaries of the Plan and other documents contained in this Disclosure Statement are qualified by reference to the Plan itself, the exhibits thereto, and the documents described therein. Debtor will file all exhibits to the Plan, in their final form, with the Bankruptcy Court no later than seven (7) days before the Voting Deadline.

The information contained in this Disclosure Statement, including the information regarding the history, business, and operations of Debtor, the financial information regarding Debtor and the liquidation analysis relating to Debtor, is included for purposes of soliciting acceptances of the Plan, but, as to contested matters, adversary proceedings, and other litigation, is not to be construed as admissions or stipulations, but rather as statements made in settlement negotiations.

The descriptions of the relief sought or obtained in this Chapter 11 Case throughout this Disclosure Statement are summaries only. All pleadings filed in the Chapter 11 Case and all orders entered by the Bankruptcy Court are publicly available and may be found, downloaded, and read from the Bankruptcy Court website found at www.kywb.uscourts.gov. Please note that access to pleadings at the Bankruptcy Court website requires registration on PACER and certain fees per page are charged.

This Disclosure Statement contains forward-looking statements based primarily on the current expectations of Debtor, and projections about future events and financial trends affecting the financial condition of Debtor. The words "believe," "may," "estimate," "continue," "anticipate," "intend," "expect," and similar expressions identify these forward-looking statements. These forward-looking statements are subject to a number of risks, uncertainties, and assumptions, including those described below under the caption "Risk Factors" in Section 7. In light of these risks and uncertainties, the forward-looking events and circumstances discussed in this Disclosure Statement may not occur, and actual results could differ materially from those anticipated in the forward-looking statements. Debtor does not undertake any obligation to update or revise publicly any forward-looking statements, whether as a result of new information, future events, or otherwise.

The requirements for Confirmation, including the vote of creditors to accept the Plan and certain statutory findings that must be made by the Bankruptcy Court, are set forth in Section 6. Consummation of the Plan and the occurrence of the Effective Date are subject to a number of significant conditions which are summarized in Section 9.3. There is no assurance that these conditions will be satisfied or waived.

### 1.3    *Important Administrative Information*

(A)    *Voting to Accept or Reject the Plan*

Ballots for voting to accept or reject the Plan will be mailed to holders of Claims and other stakeholders following the Bankruptcy Court's approval of the Disclosure Statement. If you are entitled to vote to accept or reject the Plan, complete and return the ballot to counsel for Debtor via one (1) of the following methods:

Email:          hfrint@kaplanjohnsonlaw.com
                Subject: 23-50409 – IAMGC Ballot

U.S. Mail:      Kaplan Johnson Abate & Bird LLP
                Attn: Hunter Frint
                710 W. Main St., 4th Floor
                Louisville, KY 40202

(B)    *Deadlines for Voting or Objecting to Confirmation*

The Bankruptcy Court typically establishes the date that is seven (7) days prior to the Confirmation Hearing as the deadline for submission of ballots accepting or rejecting the Plan and filing of objections to Confirmation of the Plan. Your completed ballot must be received

by counsel for Debtor on or before the Voting Deadline (as described in any Order approving this Disclosure Statement or other Bankruptcy Court Order) or it may not be counted as an acceptance or rejection of the Plan. Objections to Confirmation of the Plan must be filed with the Bankruptcy Court and served upon counsel for the Debtor, counsel for the Official Committee of Creditors with Unsecured Claims against the Debtor (the "Committee"), and the Office of the United States Trustee on or before the Objection Deadline (as described in any Order approving this Disclosure Statement or other Bankruptcy Court Order) or it may not be heard or considered at the Confirmation Hearing.

(C)     *Time and Place of Confirmation Hearing*

The hearing(s) at which the Bankruptcy Court will determine whether to confirm the Plan will take place at the Paducah Courthouse, Federal Building, 501 Broadway, Paducah, Kentucky 42001 at a date and time to be published by the Bankruptcy Court within the Order approving this Disclosure Statement.

(D)     *Whom to Contact for Additional Information*

If you want additional information about the Plan, you should contact counsel for Debtor via the contact information below:

| | |
|---|---|
| Kaplan Johnson Abate & Bird LLP | Charity S. Bird (cbird@kaplanjohnsonlaw.com) <br> Tyler R. Yeager (tyeager@kaplanjohnsonlaw.com) <br> 710 W. Main St., 4th Floor <br> Louisville, KY 40202 <br> Telephone: (502) 416-1630 |
| Epstein Becker & Green, P.C. | Ryan K. Cochran (rcochran@ebglaw.com) <br> Kendria Lewis (klewis@ebglaw.com) <br> 1222 Demonbreun St., Suite 1400 <br> Nashville, TN 37203 <br> Telephone: (615) 564-6060 |

## 2. GENERAL INFORMATION ABOUT DEBTOR

### 2.1 *Description and History of Debtor's Business*

The Debtor is a local nonprofit industrial development authority established under KRS §154.50-301 to §154.50-346, the Local Industrial Development Authority Act ("IDA Act"). All 120 counties of Kentucky are authorized to have an industrial authority. The Debtor is governed by a board of six individuals, three of which are appointed by the Mayor of the City of Mayfield and three of which are appointed by the Judge Executive of the Graves County Fiscal Court. All of the board members serve as volunteers and receive no compensation for their service. The primary function of the Debtor is to foster economic development by acquiring land for the benefit of industrial and manufacturing entities. These businesses lease the acquired land from the Debtor and the business constructs and equips a facility on the

land for the business's benefit and at its own expense. Debtor, as fee owner of the land, can pass on to the business as a lessee savings such as annual property taxes and sales taxes.

Debtor holds bare title to the land and executes mortgage(s) to fund the purchase of each property. In return, the business lessee remits lease payments equal to the mortgage payment for a period of thirty (30) years or less. At the conclusion of the lease term, the business then acquires the property as a result of its lease/mortgage payments. Debtor does not reimburse or otherwise remit any funds for the development of the property and construction of the facility, or other improvements on the land. Debtor has operated in this manner since 1999.

### 2.2    *Insiders of Debtor*

In accordance with Bankruptcy Code § 101(31), persons which may qualify as insiders of the Debtor include, without limitation, directors, officers, and other persons in control of Debtor; relatives of such directors, officers, and other persons in control; affiliates of Debtor; and the insiders of such affiliates. The directors, officers, and other persons in control of Debtor are:

| Insider | Position |
| --- | --- |
| Darvin Towery | Chairman of the Board |
| Tom Waldrop | Vice Chairman |
| Tom Wheeler | Secretary and Treasurer |
| Kathy O'Nan | Board Member |
| Kayla Turner | Board Member |
| Jesse Perry | Board Member |

Debtor's board members are not compensated and Debtor has not transferred any money or property to any individual insiders in the two (2) years prior to the Petition Date or since the Petition Date. Mr. Towery is also the president and a loan officer of Independence Bank of Kentucky, which is a creditor of the Debtor. During the two (2) years prior to the Petition Date and since the Petition Date, Debtor has not caused any direct or indirect transfers to Independence Bank of Kentucky other than the regular monthly loan payments which are paid by non-Debtor co-obligors.

### 2.3    *Events Leading to Chapter 11 Filing*

In 2018, Gencanna Global USA, Inc. ("Gencanna") entered into the lease/purchase arrangement as described above with Debtor for the development of a 100,000 square foot hemp facility on a 34.379-acre tract of land located at 3155 State Route 45 North, Mayfield, Graves County, Kentucky (the "Gencanna Site"). GenCanna engaged Pinnacle, Inc. ("Pinnacle") for the design and construction of the facility. The construction of the facility was never completed.

On January 24, 2020, Pinnacle, along with two other creditors, placed Gencanna into bankruptcy by filing an involuntary petition against it in the United States Bankruptcy Court for the Eastern District of Kentucky, Case No. 20-50133 (the "Gencanna Bankruptcy").[1] Pinnacle and its subcontractors also filed numerous mechanics liens against the Gencanna Site alleging liabilities in excess of $30 millioin. In the Gencanna Bankruptcy, the lease with Debtor was rejected leaving Debtor with the abandoned and heavily encumbered real property.

In 2019, Pinnacle and many of the subcontractors filed a lawsuit against Gencanna and Debtor in the Graves Circuit Court, Case No. 19-CI-00442 (the "State Court Litigation"). In addition to asserting the rights to foreclose on mechanics' liens, Pinnacle asserted that Gencanna merely acted as an agent for Debtor. In the nearly four years of litigation that followed, there was no foreclosure of the mechanics' liens. The State Court Litigation was funded through an unsecured loan to Debtor from Graves County Economic Development, Inc. ("GCED").

The Debtor was therefore unable to position itself to convey clear title to the Gencanna Site without first seeking relief from the Bankruptcy Court to pursue a "free and clear" asset sale under Bankruptcy Code § 363(b) and (f). With fees continuing to mount in the State Court Litigation and no ability to dispose of the Gencanna Site efficiently, Debtor filed its chapter 11 petition on September 4, 2023 in an effort to resolve the competing claims to Debtor's assets.

## 3. THE CHAPTER 11 CASE

### 3.1    *Automatic Stay*

An immediate effect of the commencement of the Chapter 11 Case was the imposition of the automatic stay under Bankruptcy Code § 362(a) that, with limited exceptions, enjoined the commencement or continuation of the enforcement of liens against Debtor's property, the continuation of litigation against Debtor, and any other collection efforts by creditors. This relief afforded Debtor with the "breathing spell" necessary to assess and reorganize its business. The automatic stay remains in effect, unless modified by the Bankruptcy Court or applicable law, until the Effective Date.

### 3.2    *Appointment of Committee*

On October 5, 2023, the United States Trustee appointed a Committee of Unsecured Creditors pursuant to Bankruptcy Code § 1102 (the "Committee"). The Committee is comprised of members The Federal Materials Company, LLC; R.L. Craig Company, Inc.; and Pinnacle, Inc. The Committee is represented by DelCotto Law Group PLLC. For additional information about the Committee, its members, or the Committee's activities, counsel for the Committee may be reached via the following contact information:

---

[1] The successor in interest to Gencanna, whose estate remains subject to administration in the Gencanna Bankruptcy, is OGGUSA, Inc.

Laura Day DelCotto
DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY 40507
Telephone: 859-231-5800
Email: ldelcotto@dlgfirm.com

### 3.3  *Retention of Professionals*

The Bankruptcy Court approved retention of certain professionals to represent and assist Debtor in connection with the Chapter 11 Case. These professionals include Kaplan Johnson Abate & Bird LLP and Epstein Becker & Green, P.C. as co-counsel for the Debtor. The Debtor also employed Tranzon Asset Advisors as broker for the sale of the Gencanna Site.

The Committee elected to retain DelCotto Law Group PLLC as counsel for the Committee. The Bankruptcy Court approved the Committee's retention and employment of DelCotto Law Group PLLC in the Chapter 11 Case.

### 3.4  *Sale of Gencanna Site*

On October 6, 2023, Debtor filed its Sale Motion to (1) establish bidding and sale procedures, (2) authorize entry into a stalking horse contract, and (3) scheduling an auction for the Gencanna Property [Doc. 48]. On November 6, 2023, the Court entered its Order approving the Sale Motion [Doc. 94]. On December 14, 2023, Debtor entered into a Stalking Horse Purchase and Sale Agreement with Grace Commercial Park, LLC for $1,607,685.00 (the "Bid Price") [Doc. 113].

The deadline for submitting Qualified Bids to Debtor was January 24, 2024. Only Pinnacle's credit bid was submitted. An auction was conducted between Grace Commercial Park and Pinnacle on January 31, 2024. Pinnacle was the successful bidder with a credit bid of $3.7 million. Pursuant to the motion filed by Pinnacle and subsequent order of the Court, all mechanic lien claimants retained their pro rata rights to distribution by either electing to become a member of a new limited liability holding company formed by Pinnacle with membership interest proportional to its lien or by accepting payment in cash proportional to the amount of its lien in proportion to all other lien claimants. The closing of the transaction with Pinnacle took place on March 1, 2024, and the Estate did not receive any net proceeds from the sale after payment of closing costs, the break-up fee to Grace Commercial Park, LLC, and the broker's commission.

### 3.5  *Claims Against Debtor*

(A)  *Filed Proofs of Claims*

The schedules and statements filed in this case indicate that the Debtor is aware of $40,415,445.40 of Claims that were secured by a purported interest in Debtor's assets, and $1,163,663,52 of non-priority unsecured Claims. Of the alleged secured Claims, the schedules

indicate that $32,415,447.41 are Disputed Claims. Each Disputed Claim is a Claim arising from the construction and improvements at the Gencanna Site.

As of the date of this Disclosure Statement, there have been fourteen (14) proofs of claim filed against the Debtor in the Bankruptcy Case. The filed claims total $23,783,473.38.

       (B)    *Claims Objections*

On January 5, 2024, Debtor filed objections to allowance of nine (9) claims which were supported by a filed proof of claim. Each such Disputed Claim is a Claim arising from the construction and improvements at the Gencanna Site for which the Debtor maintains are unliquidated and/or legally unenforceable against the Estate's property. Debtor anticipates filing additional objections to claims for those claims filed since January 5, 2024.

The Bankruptcy Court has not finally adjudicated the Debtor's objections to claims.

Except to the extent that a Claim is already an Allowed Claim pursuant to a Final Order, Debtor reserves the right to object to Claims. Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later upheld. The procedures for resolving Disputed Claims are set forth in Section 6 of the Plan.

### 3.6    *Executory Contracts and Unexpired Leases*

Commensurate with its authority pursuant to Bankruptcy Code § 365(a), Debtor has utilized this Chapter 11 Case as an opportunity to evaluate and, where appropriate in terms of maximizing long-term sustainability, discontinue or commit to future performance of its obligations arising under Executory Contracts and Unexpired Leases. Where the burden or benefit of a given Executory Contract or Unexpired Lease was readily apparent or where the Bankruptcy Code or Bankruptcy Court required assumption or rejection by an established deadline (i.e., an Unexpired Lease of nonresidential real property under which Debtor is the lessee), Debtor has obtained or sought Bankruptcy Court approval of its decisions to assume or reject certain Executory Contracts and Unexpired Leases. All other Executory Contracts and Unexpired Leases for which Debtor has not heretofore sought Bankruptcy Court approval of its decision to assume, assume and assign, or reject are addressed in Section 7 of the Plan, and the Bankruptcy Court's approval of Debtor's election with respect to each Executory Contract or Unexpired Lease not previously assumed or rejected pursuant to Final Order will be contained within the Confirmation Order.

Debtor has not rejected any Executory Contracts or Unexpired Leases. In its capacity as lessor of nonresidential real property, Debtor has obtained Bankruptcy Court approval of Debtor's assumption of Unexpired Leases with Van Deventer Family, LLC as subleased to Mayfield Consumer Products, LLC; and Cory Crowley and Lisa Crowley as subleased to LSK, Inc.

### 3.7    *Assets of the Bankruptcy Estate*

       (A)    *Real Property*

In its schedules, Debtor's real property holdings were cumulatively valued at approximately $12.5 million, and its total personal property as of the Petition Date was approximately $15,000. The valuations ascribed to the Debtor's real property holdings were based upon the assessed values as determined by the Graves County property valuation administrator and appraisals. These valuations did not account for Debtor's limited property interests under the terms of the respective lease agreements which require Debtor to transfer title to the respective lessee(s) at the expiration of the lease agreement. The value of Debtor's interest in its real property holdings is significantly less due to the terms of the lease agreements which provide for conveyance of title at the end of the lease term.

(B)    *Gencanna Claim*

Debtor expects that it may ultimately be entitled to receive one or more distributions in the Gencanna Bankruptcy case resulting from its allowed non-priority unsecured claim against Gencanna for non-payment, breach, and rejection of the parties' lease agreement concerning the Gencanna Site in the amount of $30,354,891.00. Upon information and belief, the amount to be recovered through Debtor's claims against Gencanna is approximately $227,662.00.

(C)    *Avoidance Actions*

Debtor has reviewed its financial records and accounts in light of its powers and duties as debtor in possession. Debtor did not engage in any significant cash transfers in the two (2) years prior to the Petition Date, but did cause or allow the transfer of its interests in real property holdings to Pilgrim's Pride Corporation and PRCO America on August 31, 2023. Such transfers were executed pursuant to the terms of the purchase options included within Debtor's respective lease agreements with each transferee.

(D)    *Liability Insurance*

Debtor is not presently aware of any valid claims which may be asserted against its current or former officers and directors or otherwise recoverable through making one or more claim(s) against the Debtor's insurance coverage under Policy Number P5351-2023-23836 and Policy Number L5351-2023-23835 issued through Kentucky League of Cities Insurance Services. Other entities have suggested that further investigation may be warranted to consider the viability of potential unknown and/or undiscovered claims which may be made against the policies identified above.

**3.8**    *Post-Petition Operations*

During this Chapter 11 Case, Debtor has maintained possession of its assets and has continued normal business operations as a debtor in possession. No requests for the appointment of a trustee or examiner have been made, and no committees of any kind have been appointed. A summary of Debtor's financial performance from the Petition Date through February 29, 2024, is attached hereto as **Exhibit A**.

**3.9**    *Plan Exclusivity*

The exclusive period during which only Debtor may file a chapter 11 plan was extended through April 1, 2024. The period provided by Bankruptcy Code § 1121(c)(3) within which Debtor may exclusively seek confirmation of the Plan has been extended through May 31, 2024.

## 4.  SUMMARY OF THE PLAN

### 4.1  *Overview of Chapter 11*

Chapter 11 of the Bankruptcy Code is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11 of the Bankruptcy Code, a debtor is authorized to reorganize its financial obligations and business for the benefit of itself, its creditors, and its interest holders.

Chapter 11 promotes equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of the value of a debtor's assets. The commencement of a Chapter 11 case, by the filing of a petition, creates an estate that is comprised of all legal and equitable property interests held by the debtor as of the commencement date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The confirmation and consummation of a plan of reorganization is the principal objective of a Chapter 11 case. A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the Bankruptcy Court makes the plan binding upon the debtor, any issuer of securities under the plan, any person or entity acquiring property under the plan, and any creditor of or equity security holder in the debtor, whether or not such creditor or equity security holder (i) is impaired or has accepted the plan or (ii) receives or retains any property under the plan. Subject to certain limited exceptions and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the commencement of the bankruptcy case and substitutes therefor the obligations specified under the confirmed plan, and terminates all rights and interests of equity security holders.

Confirmation of a plan, which is the vehicle for satisfying the rights of holders of claims against and equity interests in a debtor, is the overriding purpose of a Chapter 11 case. Although referred to as a plan of reorganization or liquidation, a plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of its assets. In either event, upon confirmation of a plan, it becomes binding on the debtor and all creditors and stakeholders, and the obligations owed by the debtor to those parties are compromised and exchanged for the obligations specified in the plan.

### 4.2  *Structure of the Plan*

All capitalized terms used in this Disclosure Statement and not otherwise defined herein have the meanings ascribed in the Plan.

As required by the Bankruptcy Code, the Plan places claims in various classes and describes the treatment each class will receive. The Plan also states whether each class is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the treatment provided by the Plan.

### 4.3    *Claims*

Pursuant to Bankruptcy Code § 1122, a designation of classes of Claims against Debtor is set forth below. A Claim is placed in a particular Class for purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The classification of Claims for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classification set forth on the Ballots tendered or returned by holders of Claims in connection with voting on the Plan: (a) are set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not be binding on Debtor.

(A)    *Unclassified Claims*

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code. Accordingly, Debtor has not placed the following Claims in any Class:

(1)    <u>Administrative Claims</u>

Administrative Claims are Claims for costs and expenses of administering the Chapter 11 Case which are allowed under Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a). Administrative Claims also include Claims allowed by Final Order (after notice and a hearing) for the value of any goods sold to Debtor in the ordinary course of business and received within twenty (20) days prior to the Petition Date. The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment.

The following table estimates the Allowed Administrative Claims against Debtor that will exist on the Effective Date, and describes their proposed treatment under the Plan:

| Type of Administrative Claim | Projected Amount of Claim(s) | Proposed Treatment |
| --- | --- | --- |

| | | |
|---|---|---|
| Professional Fees, as approved by the Bankruptcy Court | $150,000.00 | Paid in full on the Effective Date, or according to separate written agreement, or according to Bankruptcy Court order if such fees have not been approved as of the Effective Date. |
| Other Administrative Expenses | $0.00 | Paid in full on the Effective Date or according to separate written agreement. |
| Office of the United States Trustee Fees | $325.00 | Paid in full on the Effective Date. |
| Expenses Arising in the Ordinary Course of Business after the Petition Date | $0.00 | Paid in full on the Effective Date, or according to the terms of the obligation if later. |
| **Total:** | **$150,325.00** | |

(2)    <u>Priority Tax Claims</u>

Priority Tax Claims are unsecured income, employment, and other taxes described by Bankruptcy Code § 507(a)(8). Unless the holder of a Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the Petition Date.

As of the date this Disclosure Statement has been filed, there are no known Claims that may qualify as an Allowed Priority Tax Claim against Debtor.

(B)    *Classes of Claims*

The following are the Classes set forth in the Plan, and the treatment that is Class is proposed to receive under the Plan:

(1)    <u>Priority Claims</u>

Priority Claims that are referred to in Bankruptcy Code §§ 507(a)(1), (4), (5), (6), and (7) are required to be placed into Classes. The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

As of the date this Disclosure Statement is filed, there have been no Claims asserted which may qualify as an Allowed Priority Claim against Debtor, and Debtor is not aware of any Claim which may be entitled to allowance as a Priority Claim. Therefore, Debtor has not placed any Claims into a Class of Allowed Priority Claims.

To the extent that any Claim is an Allowed Priority Claim, the Plan proposes to place such Priority Claims into Class 1 and treat them as unimpaired. Each holder of a Class 1 Claim will be paid in full, in cash, upon the later of the Effective Date or the date on which such Class 1 Claim is determined to be an Allowed Priority Claim by Final Order.

(2)     Secured Claims

Allowed Secured Claims are Claims secured by property of the Estate to the extent allowed as Secured Claims under Bankruptcy Code § 506. If the value of the collateral or setoffs securing the Claim is less than the amount of the creditor's Allowed Claim, the deficiency will be classified as a non-priority unsecured Claim unless specifically otherwise provided in the Plan.

The following table identifies all Classes containing Allowed Secured Claims against the Debtor:

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2A | Allowed Secured Claim of Purchase Area Development District secured by 200 Kentex Drive | Impaired | Lien on property of the Estate retained; Allowed Secured Claim to be paid by third-party guarantor. |
| 2B | Allowed Secured Claim of Independence Bank of Kentucky secured by 200 Kentex Drive | Impaired | Lien on property of the Estate retained; Allowed Secured Claim to be paid by third-party guarantor. |
| 2C | Allowed Secured Claim of United Community Bank secured by 22 Rifle Trail | Impaired | Lien on property of the Estate retained; Allowed Secured Claim to be paid by third-party guarantor. |
| 2D | Allowed Secured Claim of Tennessee Valley Authority secured by 22 Rifle Trail | Impaired | Lien on property of the Estate retained; Allowed Secured Claim to be paid by third-party guarantor. |

(3)     Unsecured Claims

Unsecured Claims are Claims not secured by property of the Estate and not entitled to priority treatment under Bankruptcy Code § 507(a).

The following table identifies all Classes containing Allowed Unsecured Claims against Debtor:

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 3 | Allowed Unsecured Non-Priority Claims | Impaired | Each holder of a Class 3 Claim shall receive a one-time cash payment equal to the holder's Pro Rata share of the funds available for distribution among holders of Class 3 Claims from the IAMGC Liquidating Trust. |

### 4.4    *Executory Contracts and Unexpired Leases*

The Debtor has previously obtained approval from the Bankruptcy Court for Debtor's assumption of certain Unexpired Leases in which the Debtor is lessor of nonresidential real property. Section 7of the Plan identifies all Executory Contracts and Unexpired Leases that Debtor intends to reject under the Plan.

Consult your advisor or attorney for more specific information about the effect of rejection on your Executory Contract or Unexpired Lease with the Debtor. If you oppose Debtor's rejection of your Executory Contract or Unexpired Lease, the characterization of your rights vis-à-vis Debtor as arising under an Executory Contract or Unexpired Lease, or the proposed treatment of your claim for rejection damages under the Plan, you must file and serve your objection to Confirmation within the Objection Deadline unless the Bankruptcy Court has set an earlier time.

UNLESS DEBTOR HAS REJECTED A PARTICULAR EXECUTORY CONTRACT OR UNEXPIRED LEASE PRIOR TO ENTRY OF THE CONFIRMATION ORDER, THE DEADLINE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE IS THIRTY (30) DAYS AFTER ENTRY OF THE CONFIRMATION ORDER. Any Claim based on the rejection of an Executory Contract or Unexpired Lease will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

### 4.5    *Means of Implementing the Plan*

(A)    *Source of Payments*

Upon entry of the Confirmation Order, Debtor will continue to operate its business and manage all assets not contributed to the Liquidating Trust as described below and in the Plan. The Debtor's continued operations will involve collection and application of PILOT payments from its co-obligors and/or lessees and sublessees to meet its ongoing operating expenses and direct payments to holders of Claims in Classes 2A, 2B, 2C, and 2D by the respective non-Debtor co-obligor(s). The Debtor anticipates that the Allowed Fee Claims payable to Debtor's counsel will be paid by GCED on Debtor's behalf pursuant to GCED's third-party payor agreements with Kaplan Johnson Abate & Bird LLP and Epstein Becker &

Green, P.C. All other distributions required under the Plan will payable and paid through the Liquidating Trust.

      (B)   *Post-Confirmation Management*

Following Confirmation, the Debtor will continue to be managed by its board of directors. The individuals comprising the board of directors will serve their respective terms and positions in accordance with the Debtor's by-laws and applicable statutes.

      (C)   *Liquidating Trust for Benefit of Creditors*

On the Effective Date, Debtor and the Liquidating Trustee designated post-Confirmation by the Committee, shall execute the IAMGC Liquidating Trust Agreement and take all other necessary steps to establish the Liquidating Trust for the benefit of holders of Class 3 Claims. The Liquidating Trust shall be a liquidating grantor trust established for the sole purpose of liquidating the trust's assets and making distributions to its beneficiaries, with no objective to continue or engage in the conduct of any trade or business. The Liquidating Trust shall be deemed to be a party in interest for purposes of contesting, settling, or compromising objections to Claims and causes of action. The Liquidating Trust shall be vested with all the powers and authority set forth in the Plan and the Liquidating Trust Agreement.

The Liquidating Trustee shall be deemed to have been appointed as the representative of the bankruptcy estate and the Liquidating Trust by the Bankruptcy Court pursuant to Bankruptcy Code § 1123(b)(3)(B). The Liquidating Trustee shall be entitled to retain and compensate counsel and other professionals as may be necessary to carry out the Liquidating Trustee's duties and without further approval of the Bankruptcy Court. From and after the Effective Date, the Liquidating Trustee shall be vested with authority to take any action contemplated by the Plan on behalf of the Estate or the Liquidating Trust without the need for further approvals, notices, or meetings other than as set forth in the Liquidating Trust Agreement.

### 4.6   *Federal Tax Consequences of Plan*

**HOLDERS OF CLAIMS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITIES SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.**

> IRS Circular 230 Disclosure: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used for the purpose of (a) avoiding penalties under the Internal Revenue Code or (b) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

      (A)   *General*

A DESCRIPTION OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN IS PROVIDED BELOW. NO RULING HAS BEEN REQUESTED FROM THE IRS AND NO LEGAL OPINION HAS BEEN REQUESTED FROM

COUNSEL CONCERNING ANY TAX CONSEQUENCE OF THE PLAN, AND NO TAX OPINION IS GIVEN BY THIS DISCLOSURE STATEMENT.

THIS DESCRIPTION DOES NOT COVER ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO DEBTOR OR HOLDERS OF CLAIMS. FOR EXAMPLE, THE DESCRIPTION DOES NOT ADDRESS ISSUES OF SPECIAL CONCERN TO CERTAIN TYPES OF TAXPAYERS, SUCH AS DEALERS IN SECURITIES, LIFE INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, TAX-EXEMPT ORGANIZATIONS, AND FOREIGN TAXPAYERS. THIS DESCRIPTION DOES NOT DISCUSS THE POSSIBLE STATE TAX OR NON-U.S. TAX CONSEQUENCES THAT MIGHT APPLY TO DEBTOR OR HOLDERS OF CLAIMS.

FOR THESE REASONS, THE DESCRIPTION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED UPON THE UNIQUE CIRCUMSTANCES OF EACH HOLDER OF A CLAIM. HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL, AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

        (B)    *Tax Consequences of Payment of Allowed Claims Pursuant to Plan*

The federal income tax consequences of the implementation of the Plan to holders of Allowed Claims will depend, among other things, on the consideration to be received by the holder, whether the holder reports income on the accrual or cash method, whether the holder receives distributions under the Plan in more than one taxable year, whether the holder's Claim is allowed or disputed on the Effective Date, and whether the holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

        (1)    <u>Recognition of Gain or Loss</u>

In general, a holder of an Allowed Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the holder's tax basis in the Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Allowed Claim and the holder, the length of time the holder held the Claim, and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, the holder's deduction of the loss may be subject to limitation. The holder's tax basis for any property received under the Plan generally will equal the amount realized. The holder's amount realized generally will equal the sum of the cash and the fair market value of any other property received by the holder under the Plan on the Effective Date or a subsequent distribution date, less the amount (if any) treated as interest, as discussed below.

        (2)    <u>Post-Effective Date Distributions</u>

Because certain holders of Allowed Claims, including Disputed Claims that ultimately become Allowed Claims, may receive cash distributions after the Effective Date, the imputed interest provisions of the Internal Revenue Code may apply and cause a portion of the

subsequent distribution to be treated as interest. Additionally, because holders may receive distributions with respect to an Allowed Claim in a taxable year or years following the year of the initial distribution, any loss and a portion of any gain realized by the holder may be deferred. All holders of Allowed Claims are urged to consult their tax advisors regarding the possible application of (or ability to elect out of) the "installment method" of reporting with respect to their Claims.

### (3)    Receipt of Interest

Holders of Allowed Claims will recognize ordinary income to the extent that they receive cash or property that is allocable to accrued but unpaid interest which the holder has not yet included in its income. If an Allowed Claim includes interest, and if the holder receives less than the amount of the Allowed Claim pursuant to the Plan, the holder must allocate the Plan consideration between principal and interest. The holder may take the position that the amounts received pursuant to the Plan are allocable first to principal, up to the full amount of principal, and only then to interest. However, the proper allocation of Plan consideration between principal and interest is unclear and holders of Allowed Claims should consult their own tax advisors in this regard. If the Plan consideration allocable to interest with respect to an Allowed Claim is less than the amount that the holder has previously included as interest income, the previously included but unpaid interest may be deducted, generally as a loss.

### (4)    Bad Debt or Worthless Securities Deduction

A holder who receives in respect of an Allowed Claim an amount less than the holder's tax basis in the Claim may be entitled in the year of receipt (or in an earlier or later year) to a bad debt deduction in some amount under Internal Revenue Code § 166(a) or a worthless securities deduction under Internal Revenue Code § 165(g). The rules governing the character, timing, and amount of bad debt and worthless securities deductions place considerable emphasis on the facts and circumstances of the holder, the obligor, and the instrument with respect to which a deduction is claimed. Holders of Allowed Claims, therefore, are urged to consult their tax advisors with respect to their ability to take such a deduction.

### (C)    *Information Reporting and Withholding*

Under the Internal Revenue Code's backup withholding rules, the holder of an Allowed Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan unless the holder comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact, or provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax. Holders of Allowed Claims may be required to establish exemption from backup withholding or make arrangements with respect to the payment of backup withholding.

## 5.  CONFIRMATION PROCEDURES

### 5.1  *Approval of Disclosure Statement*

This Disclosure Statement has been prepared in accordance with Bankruptcy Code § 1125 and Bankruptcy Rule 3016(b), and not necessarily in accordance with federal or state securities laws or other non-bankruptcy laws. The purpose of this Disclosure Statement is to provide adequate information to enable the holder of a Claim against Debtor to make a reasonably informed decision with respect to the Plan prior to exercising its right to vote to accept or reject the Plan. Prior to Debtor's dissemination of this Disclosure Statement to holders of Claims for the purpose of soliciting votes to accept the Plan, Debtor must obtain Bankruptcy Court approval of this Disclosure Statement as containing information of a kind and in sufficient and adequate detail to enable such holders to make an informed judgment with respect to acceptance or rejection of the Plan. The Bankruptcy Court's approval of this Disclosure Statement does not constitute either a guarantee of the accuracy or completeness of the information contained herein or an endorsement of the Plan by the Bankruptcy Court.

### 5.2  *Solicitation of Votes*

No person is authorized by Debtor in connection with the Plan or the solicitation of acceptances of the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits attached hereto or incorporated by reference, and, if given or made, such information or representation may not be relied upon as having been authorized by Debtor.

### 5.3  *Voting on the Plan*

In accordance with the Bankruptcy Code, only holders of Claims against Debtor that have been placed into Classes that are "impaired" under the terms of the Plan are entitled to vote to accept or reject the Plan. A Class is "impaired" if the legal, equitable, or contractual rights attaching the Claims of that Class are modified other than by curing defaults and reinstating maturity. Classes of Claims that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, classes of Claims that receive no distributions under the Plan are deemed to have rejected the Plan unless such Class otherwise indicates acceptance. The classification and treatment of Claims is summarized in Section 4.3(B) of this Disclosure Statement.

VOTING ON THE PLAN BY EACH HOLDER OF AN IMPAIRED CLAIM ENTITLED TO VOTE ON THE PLAN IS IMPORTANT. IF YOU HOLD CLAIMS IN MORE THAN ONE CLASS, IF YOU HOLD MULTIPLE NON-PRIORITY UNSECURED CLAIMS, OR UNDER CERTAIN OTHER CIRCUMSTANCES, YOU MAY SUBMIT MORE THAN ONE BALLOT. YOU SHOULD COMPLETE, SIGN, AND RETURN A CORRESPONDING BALLOT FOR EACH CLAIM YOU HOLD AGAINST DEBTOR.

PLEASE CAREFULLY FOLLOW ALL OF THE INSTRUCTIONS CONTAINED ON THE BALLOT MADE AVAILABLE TO YOU. ALL BALLOTS MUST BE

COMPLETED AND RETURNED IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED THEREON.

TO BE COUNTED, YOU BALLOT MUST ACTUALLY BE RECEIVED BY THE VOTING DEADLINE. IT IS OF THE UTMOST IMPORTANCE TO DEBTOR THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN.

**Votes cannot be transmitted orally. Accordingly, you are urged to return your signed and completed ballot by hand-delivery, email, overnight service, or regular U.S. mail.**

(A)    *Eligibility*

Many parties in interest are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a Claim that is both (1) Allowed (or Allowed for voting purposes) and (2) impaired.

In this Chapter 11 Case, Debtor believes that Classes 2A, 2B, and 3 are impaired and that holders of Allowed Claims in each of those Classes are therefore entitled to vote on the Plan.

(1)    <u>Allowed Claims</u>

Only the holder of an Allowed Claim has the right to vote on the Plan. When a Claim is not allowed, the purported creditor cannot vote to accept or reject the Plan unless the Bankruptcy Court, after notice and hearing, either determines in a Final Order that the Disputed Claim is an Allowed Claim, or allows the Claim for voting purposes pursuant to Bankruptcy Rule 3018(a).

(2)    <u>Impairment</u>

The holder of an Allowed Claim has the right to vote only if it is in a Class that is "impaired" under the Plan. As provided in Bankruptcy Code § 1124, a Class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class.

(B)    *Voting in Multiple Classes*

The holder of an Allowed Claim that has been allowed in part as a Secured Claim and in part as an Unsecured Claim, or the holder of multiple Allowed Claims in multiple Classes, is entitled to accept or reject the Plan in each capacity, and should cast one ballot for each Class in which the holder is a member.

(C)    *Persons Not Entitled to Vote*

The holders of the following types of Claims are <u>not</u> entitled to vote on the Plan unless they hold other Allowed Claims in one or more impaired Classes: those that have been disallowed by Final Order of the Bankruptcy Court; those that are in a Class that is unimpaired by the Plan; those entitled to priority pursuant to Bankruptcy Code §§ 507(a)(2), (a)(3), and (a)(8); those that will not receive or retain any value or property under the Plan; and those that are Administrative Expenses.

## 6.  CONFIRMATION REQUIREMENTS

To be confirmable, the Plan must meet the requirements listed in Bankruptcy Code §§ 1129(a) or (b). These include the requirements that: the Plan must be proposed in good faith; at least one impaired Class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in Bankruptcy Code § 1129, and they are not the only requirements for Confirmation.

### 6.1    *Feasibility of the Plan*

Bankruptcy Code § 1129(a)(11) requires that the Bankruptcy Court must find that Confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of Debtor unless contemplated by the Plan. This requirement is commonly referred to as the "feasibility" requirement. The Plan does not contemplate a subsequent liquidation or financial reorganization, and Debtor believes that it will be able to timely perform all obligations described in the Plan because (1) Debtor's continuing debt obligations are guaranteed and paid by non-Debtor obligors; (2) certain Allowed Administrative Claims will be paid by third-party GCED rather than collected from the Estate; and (3) Debtor's performance of other obligations under the Plan will be completed upon execution of and conveyance to the Liquidating Trust. Therefore, Debtor believes that the Bankruptcy Court will find that the Plan is feasible.

### 6.2    *Best Interests Test*

#### (A)    *Finding of Fact Required*

Even if the Plan is accepted by each Class of Claims, the Bankruptcy Code requires the Bankruptcy Court to determine that the Plan is in the best interests of all holders of Claims that are impaired by the Plan and that have not accepted the Plan. The "best interests" test, as set forth in Bankruptcy Code § 1129(a)(7), requires the Bankruptcy Court to find either that (i) all members of an impaired Class of Claims have accepted the Plan, or (ii) the Plan will provide a member who has not accepted the Plan with a recovery of property of a value, as of the Effective Date, that is not less than the amount such holder would recover if Debtor was liquidated under chapter 7 of the Bankruptcy Code.

#### (B)    *Liquidation Analysis*

To calculate the probable distribution to members of each impaired Class of Claims if Debtor was liquidated under chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from Debtor's assets if this Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of Debtor's assets by a chapter 7 trustee.  As discussed in Section 8.1, *infra*, the amount of liquidation value available to unsecured creditors would be reduced by the administrative costs of the case proceeding under chapter 7 of the Bankruptcy Code.

Once the Bankruptcy Court ascertains the secured creditors' and priority claimants' recoveries in a liquidation, it must determine the probable distribution to general unsecured creditors from the remaining available proceeds in a liquidation. If such probable distribution has a greater value than the distributions to be received by such creditors and equity security holders under a chapter 11 plan, then such plan is not in the best interests of creditors and equity security holders.

### 6.3    *Application of Best Interests Test*

The Debtor's liquidation analysis of the Estate is attached to this Disclosure Statement as **Exhibit B** (the "Liquidation Analysis"), but any liquidation analysis is inherently speculative due to the foundational estimates and assumptions. Nevertheless, Debtor believes that the methodology used to prepare the Liquidation Analysis is appropriate and that the assumptions and conclusions set forth therein are fair and reasonable under the circumstances. However, the estimate of Allowed Claims, Administrative Expense Claims, distributions to be made on account of Allowed Claims, and all other assumptions used in the Liquidation Analysis should not be relied on for any other purpose.

Notwithstanding the difficulties in quantifying recoveries to creditors with precision, Debtor believes that, considering the Liquidation Analysis and the estimated distributions contemplated under the Plan, the Plan clearly satisfies the "best interests" test of Bankruptcy Code § 1129(a)(7). Debtor believes that the members of each impaired Class will receive at least as much under the Plan as they would through liquidation in a hypothetical chapter 7 case.

### 6.4    *Votes Necessary for Confirmation*

As a condition to Confirmation, the Bankruptcy Code requires that each Class of impaired Claims vote to accept the Plan, except under certain circumstances.

(A)    *Class Acceptance*

Bankruptcy Code § 1126(c) defines acceptance of a plan by a Class of impaired Claims as acceptance by holders of (i) at least two-thirds (2/3) in dollar amount and (ii) more than one-half (1/2) in number of claims in that class but, for the latter purpose, counts only those who actually vote to accept or reject the plan. Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.

(B)    *Treatment of Non-Accepting Classes*

Even if one or more impaired Class votes to reject the Plan, the Bankruptcy Court may nonetheless confirm the Plan if at least one (1) impaired Class of Claims has accepted the Plan, and the non-accepting Classes are treated in a manner prescribed by Bankruptcy Code § 1129(b). A plan that binds non-accepting Classes is commonly referred to as a "cramdown" plan.

*You should consult your own attorney if a cramdown confirmation will affect your Claim, as the variations on this general rule are numerous and complex.*

### 6.5    *"Cramdown" Confirmation*

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims (excluding the votes of "insiders") has accepted it. The Bankruptcy Court may confirm the Plan at Debtor's request notwithstanding an impaired Class' rejection of the Plan as long as the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired Class that has not accepted it.

A plan is fair and equitable as to a class of secured claims that rejects such plan if the plan provides (1)(a) that the holders of such claims in the rejecting class retain their liens securing those claims to the extent of the allowed amount of such claims, whether the collateralized property is retained by the debtor or transferred to another entity, and (b) that each holder of such a claim receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, of at least the value of the holder's interest in the estate's interest in such property; (2) for the sale, subject to Bankruptcy Code § 363(k), of any property that is subject to the liens securing the claims including in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (a) or (b) of this sentence; or (3) for the realization by such holders of the indubitable equivalent of their claims.

A plan is fair and equitable as to a class of unsecured claims that rejects such plan if the plan provides (1) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has value, as of the effective date of the  plan, equal to the allowed amount of such claim; or (2) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

If any impaired Class votes to reject the Plan, Debtor will seek Confirmation pursuant to Bankruptcy Code § 1129(b).

## 7.  RISK FACTORS

The holder of a Claim against Debtor should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement (and any documents incorporated by reference herein), before deciding whether to vote to accept or reject the Plan. These factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

### 7.1    *Debtor May Not be able to Obtain Confirmation*

Debtor cannot ensure that it will receive the requisite acceptances from the holders of Allowed Claims to confirm the Plan. Even if all impaired Classes accept or could be deemed to have

accepted the Plan, Debtor cannot insure that the Bankruptcy Court will confirm the Plan. One or more non-accepting holders(s) of Claims, or the United States Trustee, might challenge the adequacy of this Disclosure Statement or the balloting procedures and results as not being in compliance with the Bankruptcy Code or the Bankruptcy Rules. Even if the Bankruptcy Court determined that this Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met. Bankruptcy Code § 1129 sets forth the requirements for Confirmation and requires, among other things, a finding by the Bankruptcy Court that (a) Confirmation is not likely to be followed by liquidation or a need for further financial reorganization; (b) the Plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting Classes; (c) the value of distributions to dissenting holders of Claims will not be less than the value of distributions such holders would receive if Debtor was liquidated under chapter 7 of the Bankruptcy Code; and (d) the Plan and Debtor have otherwise complied with the applicable provisions of the Bankruptcy Code. Although Debtor believes that the Plan will meet all applicable tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Consummation of the Plan is also subject to certain conditions described in Section 9.3 of this Disclosure Statement. If the Plan is not confirmed, it is unclear whether a restructuring of Debtor could be implemented and what distributions holders of Claims ultimately would receive with respect to their Claims. If an alternative reorganization could not be implemented, it is possible that Debtor would have to liquidate its assets, in which case it is likely that holders of Claims would receive substantially less favorable treatment than they would receive under the Plan.

### 7.2    *Parties in Interest May Object to Debtor's Classification of Claims*

Bankruptcy Code § 1122 provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in such class. Debtor believes that the classification of Claims under the Plan complies with the requirements set forth in the Bankruptcy Code, as augmented or clarified by controlling legal precedent.

### 7.3    *The Actual Amounts of Allowed Claims May Vary from Debtor's Estimated Amounts of Allowed Claims*

The estimated Claims set forth in the Plan and Disclosure Statement are based on various assumptions and the actual amounts of Allowed Claims may significantly differ from the estimates. In addition, Debtor may have omitted, whether by error or ignorance, a Claim that is ultimately proven to be an Allowed Claim which could alter the recovery realized by holders of other similarly situated Allowed Claims. Should any of the underlying assumptions relied upon in the estimation of Claims ultimately prove to be incorrect, the actual allowed amounts of Claims may vary from the estimated Claims contained herein. As a result, such differences may materially and adversely affect the percentage recovery on Class 3 Non-Priority Unsecured Claims under the Plan.

### 7.4    *Debtor May Attempt to Achieve Confirmation Notwithstanding an Inability to Obtain Votes Necessary for Consensual Confirmation*

Pursuant to the "cramdown" provisions of Bankruptcy Code § 1129, the Bankruptcy Court can confirm the Plan at Debtor's request if (i) at least one impaired Class has accepted the Plan (with such acceptance being determined without including the acceptance of any "insider" in such Class) and (ii) with respect to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable." In accordance with Bankruptcy Code § 1129(a)(8), Debtor will request that the Bankruptcy Court confirm the Plan without the acceptance of all impaired Classes entitled to vote.

Debtor hereby reserves the right to modify the terms of the Plan as necessary for Confirmation without the acceptance of all impaired Classes. Such modification could result in less favorable treatment for any non-accepting Classes than the treatment currently provided for in the Plan. Such less favorable treatment could include a distribution of property of a lesser value than that currently proposed in the Plan or no distribution of property whatsoever.

## 8.  ALTERNATIVES TO CONFIRMATION OF THE PLAN

### 8.1    *Chapter 7 Liquidation*

Notwithstanding acceptance of the Plan by the requisite number of members of any Class, the Bankruptcy Court must still independently determine that the Plan provides each member of each impaired Class of Claims a recovery that has a value at least equal to the distribution that each such Claim holder would receive if Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

If no plan is confirmed, this Chapter 11 Case may be converted to a case under chapter 7 of the Bankruptcy Code. In a chapter 7 case, a trustee would be appointed to liquidate the assets of the Estate. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against Debtor.

However, Debtor believes that creditors would lose the benefit of a substantially higher going concern value if Debtor was forced to liquidate. In addition, Debtor believes that in liquidation under chapter 7, before holders of Allowed Claims received any distribution, additional administrative expenses involved in the appointment of a trustee and the necessary attorneys, accountants, and other professionals to assist such trustee(s) would cause a substantial diminution in the value of the Estate. The assets available for distribution to creditors would be reduced by such additional expenses and by Claims, some of which would be entitled to priority, which would arise by reason of the liquidation and from the rejection of Unexpired Leases and other Executory Contracts in connection with the cessation of Debtor's operations.

### 8.2    *Chapter 11 Liquidation*

Debtor could also be liquidated pursuant to a chapter 11 plan if the Plan is not confirmed. In liquidation under chapter 11, Debtor's assets could be sold in an orderly fashion over a more extended period of time than in liquidation under chapter 7.  Thus, a chapter 11 liquidation might result in greater recoveries than a chapter 7 liquidation, but the delay in distributions could result in lower present values received and higher administrative costs. Because a trustee is not required in a chapter 11 liquidation, expenses for professional fees could be lower than in a chapter 7 case in which a trustee must be appointed. Any distribution to the holders of Claims under a chapter 11 liquidation plan probably would be delayed substantially. Notwithstanding the potentially lower administrative costs associated with a Chapter 11 liquidation, the value of any distributions to holders of Claims against Debtor would be substantially diluted by the increased amount and value of Claims resulting from the cessation of Debtor's operations.

The likely form of any liquidation would be the piecemeal sale of individual assets. Based on this analysis, a liquidation of Debtor's assets likely would produce less value for distribution to creditors than that recoverable in each instance under the Plan. In Debtor's opinion, the recoveries projected to be available in liquidation are not likely to afford holders of Claims as great a realization potential as provided for under the Plan.

### 8.3    *Alternative Plans*

If the Plan is not confirmed, Debtor or any other party in interest in this Chapter 11 Case could, after expiration of Debtor's exclusivity period, propose a different plan.

## 9.  EFFECT OF CONFIRMATION OF THE PLAN

The effectiveness of the Plan is subject to material conditions precedent, some of which may not be satisfied. There is no assurance that these conditions will be satisfied.

### 9.1    *Discharge of Debtor*

Upon Confirmation of the Plan, Debtor shall be discharged from any debt that arose prior to Confirmation, subject to the occurrence of the Effective Date, to the extent specified in Bankruptcy Code § 1141(d)(1)(A), underlined, however, that Debtor shall not be discharged of any debt (1) imposed by the Plan, (2) of a kind specified in Bankruptcy Code § 1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (3) of a kind specified in Bankruptcy Code § 1141(d)(6)(B).  After the Effective Date your Claims against Debtor will be limited to the debts described in clauses (1) through (3) of the preceding sentence.

### 9.2    *Modification of Plan*

Debtor may modify the Plan at any time prior to Confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or additional voting on the Plan.

Debtor may also seek to modify the Plan at any time after Confirmation only if (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and hearing.

### 9.3    *Consummation of Plan*

(A)    *Conditions Precedent*

The Effective Date shall occur on or prior to August 1, 2024, unless such date is extended by written consent of Debtor.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 9.3(B) of this Disclosure Statement:

(1)    The Bankruptcy Court shall have entered one or more Orders (which may include the Confirmation Order) authorizing the assumption or rejection of Unexpired Leases and Executory Contracts by Debtor as contemplated by Section 4.4 of this Disclosure Statement;

(2)    The Confirmation Order has been entered, has not been reversed, stayed, modified, or amended, and has become a Final Order;

(3)    The Bankruptcy Court shall have entered an Order (contemplated to be part of the Confirmation Order) approving and authorizing Debtor to take all actions necessary or appropriate to implement the Plan in form and substance reasonably acceptable to Debtor, which Order shall include provisions for the implementation and completion of all transactions contemplated by the Plan and the implementation and consummation of the contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with the Plan; and

(4)    All other actions, documents, consents, and agreements necessary to implement the Plan shall have been taken, obtained, and/or executed.

(B)    *Waiver of Conditions*

The conditions set forth Section 9.3(A) of this Disclosure Statement may be waived by Debtor without any notice to other parties in interest or the Bankruptcy Court and without a hearing. The failure of Debtor to exercise any of the foregoing rights, in its sole discretion, shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

### 9.4    *Notice of Effective Date*

Following occurrence of the Effective Date, Debtor or such other party as the Bankruptcy Court may designate in the Confirmation Order shall file a Notice of the Effective Date.

### 9.5    *Retention of Jurisdiction*

Pursuant to Bankruptcy Code §§ 105(a) and 1142, Debtor will request that the Confirmation Order provide that the Bankruptcy Court retains exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan, including, without limitation, the matters described in Section 13.2 of the Plan. Notwithstanding the foregoing, Debtor and any party may agree in writing that the jurisdiction of the Bankruptcy Court shall not be exclusive, but concurrent with other courts of competent jurisdiction.

**9.6**    *Final Decree*

Once the Estate has been fully administered, as provided in Bankruptcy Rule 3022, Debtor or such other party as the Bankruptcy Court may designate in the Confirmation Order shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.  Alternatively, the Bankruptcy Court may enter such final decree on its own motion.

## 10. RECOMMENDATION AND CONCLUSION

It is Debtor's position that the Plan is substantially preferable to liquidation under chapter 7 of the Bankruptcy Code. Conversion of the Chapter 11 Case to a case under chapter 7 would result in: (i) substantial delays in the distribution (if any) of proceeds available under such alternative; (ii) increased uncertainty as to whether payments would be made to unsecured creditors; and (iii) substantially increased administrative costs.

It is important that you exercise your right to vote on the Plan. It is Debtor's belief that the Plan fairly and equitably provides for the treatment of all Claims against Debtor.  **Debtor recommends and urges all parties to vote to accept the Plan.**


        IN WITNESS WHEREOF, Debtor has submitted this Disclosure Statement the 1st day of April 2024.

THE INDUSTRIAL AUTHORITY OF MAYFIELD-GRAVES COUNTY


*/s/ Darvin Towery*_____
Darvin Towery, Chairman of the Board
